
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **JOSEPHINE H. JORDAN** | § | Case No. 10-41434 |
| xxx-xx-7154 | § | |
| | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| DAVID M. KENNEDY | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 10-4183 |
| | § | |
| JOSEPHINE HUDGINS JORDAN | § | |
| | § | |
| Defendant | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

Upon trial of the complaint in the above-referenced adversary proceeding, the

Court issues the following findings of fact and conclusions of law pursuant to Fed. R.

Civ. P. 52, as incorporated into adversary proceedings in bankruptcy cases by Fed. R.

Bankr. P. 7052.

### FINDINGS OF FACT

1.  The complaint seeks a determination of the dischargeability of the debt owing by
    the Debtor-Defendant, Josephine Hudgins Jordan ("Defendant"), to the Plaintiff,
    David M. Kennedy ("Plaintiff").

---

[1]  These findings of fact and conclusions of law are not designated for publication and shall not
considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the
law of the case or as to other applicable evidentiary doctrines.

2.      In June 2002, the Plaintiff sought to sell his residence at 403 W. Belden St., in Sherman, Texas, and contracted with the Defendant, in her role as a real estate broker and agent, to market and sell that residential property.

3.      In that regard, the Plaintiff executed a series of listing agreements with the Defendant,[2] culminating in the execution of a "Residential Real Estate Listing Agreement Exclusive Right to Sell" under which the Defendant possessed an exclusive listing that would expire on September 1, 2004.[3]

4.      The listing agreement contained a 45-day "Protection Period" which could entitle the Defendant to the payment of a commission in the 45-day period following the expiration date of September 1, 2004, if written notice of the parties shown the property prior to the expiration date was sent to the Plaintiff within 10 days following the expiration of the listing agreement.[4]

5.      On August 24, 2004, the Plaintiff notified the Defendant of his intent to forego renewal of the listing agreement upon its expiration and to seek the services of a new listing agent.[5]

6.      Despite certain efforts, no offer was communicated to the Plaintiff prior to September 1, 2004.

7.      Shortly after September 1, 2004, the Defendant brought a sales contract to the Plaintiff from John and Leslie Merrell, proposing to buy the Plaintiff's Belden Street residence.

8.      After one counteroffer tendered by the Plaintiff, the Merrells tendered, and the Plaintiff signed, in September 2004, a sales contract for the sale of the Plaintiff's Belden Street residence for a sales price of $475,000.00 (the "Merrell Contract").[6]

---

[2]  See Ex. 1-3.

[3]  Ex. 3.

[4]  *Id.* at ¶ 5(E).

[5]  Ex. 4.

[6]  Ex. 5.

9.      The Merrell Contract contained two major contingencies:  (1) the procurement of third party financing in the amount of $427,500 and (2) the sale of the Merrells' property in Southlake, TX.[7]

10.     The "Sale of Other Property" contingency provided that if the Plaintiff accepted another offer, the Merrells would have two days to waive the contingency.  Such waiver required formal written notification and the deposit of $1,000 as additional earnest money.[8]

11.     The Merrell Contract provided for a closing date of November 19, 2004 and further provided that the Plaintiff would be required to relinquish possession of his Belden Street residence within seven (7) days of the closing date.[9]

12.     The Plaintiff presumed, without contradiction from the Defendant, that the Merrell Contract would fall within the provisions of the 45-day protection period which would reward a commission to the Defendant upon the sale of the Belden Street residence because the Merrells had seen the property prior to the September 1, 2004 expiration of the listing agreement.

13.     During the pendency period of the Merrell Contract, the Plaintiff believed, based upon discussions with the Defendant, that, notwithstanding the contingencies, the Merrells likely possessed the financial capacity to close on the Belden Street residence without the necessity of obtaining financing or selling their Southlake property.

14.     During the pendency period of the Merrell Contract, the Plaintiff began to investigate, at times with the Defendant's assistance, the limited residential rental options for his family in Sherman.

15.     The Defendant answered most of the Plaintiff's inquiries regarding the progress of the resolution of the Merrells' contingencies during the pendency period by her contention that the Merrells were having "lender problems," but she urged continued patience with the process.

---

[7] *Id.*

[8] *Id.*

[9] *Id.*

16.   During the pendency period, the Plaintiff agreed with the Defendant that the Belden Street residence should be continued to be shown to other potential purchasers to enhance the possibility that, through the receipt of a competing contract, the Merrells would be compelled to address the outstanding contingencies and proceed with the closing of the pending contract.

17.   Subsequent to the showing of the residence to a couple from Arizona who expressed great interest in acquiring the property in early November, the Defendant contacted the Plaintiff and represented that the Merrells had learned of the interest expressed by a competing purchaser.

18.   The Defendant subsequently notified the Plaintiff that the Merrells had actually removed all of the contingencies existing in the Merrell Contract and had tendered the additional earnest money required by the contract.

19.   At that time, the Defendant placed a "sold" sign in the front yard of the Plaintiff's Belden Street residence — not a "contract pending" sign.[10]

20.   Upon being notified of these positive developments occurring in early November 2004, and with November 19 remaining as the designated closing date under the contract, the Plaintiff intensified his efforts to locate a suitable rental property in Sherman as a residence for his family.

21.   The Plaintiff even utilized the services of the Defendant in those renewed efforts to locate a suitable rental property.  At no time in early November did the Defendant indicate that the closing of the contract was not imminent.[11]

22.   On or about November 12, 2004, the Plaintiff learned that a newly-constructed house in a desirable neighborhood had just been listed for lease.

23.   On Friday, November 12, 2004, the Plaintiff executed a Residential Lease for the premises located at 600 Clay Lane in Sherman.[12]   The lease term was from

---

[10]   See also Ex. 14 – whereby the Belden Street residence was denominated as "sold."

[11]   This was true, notwithstanding the Plaintiff's expressed willingness, upon inquiry by the Defendant, to extend the closing date if necessary under the circumstances.  However, no formal extension was ever executed.

[12]   Ex. 6.

November 15, 2004 until November 30, 2005 for a monthly rental amount of $1,900.00.

24.    On Monday, November 15, 2004, the Plaintiff tendered to the leasing agent the required sum of $4,100.00 for the Clay Lane rental property[13] and began actions to move his family to that location, including the placement of required utility deposits.

25.    On Tuesday, November 16, 2004, as a postscript to an unrelated real estate inquiry, the Plaintiff indicated to the Defendant that the "sold" sign was gone and inquired as to whether the closing date had been revised.[14]

26.    On that same date, the Defendant answered that inquiry with a handwritten response that the Merrells' broker was waiting on their lender to provide any specific revision to the designated closing date.[15]

27.    On that same date, the Plaintiff began the process of moving his family to the Clay Lane rental property.

28.    The Plaintiff received no more communications from the Defendant in advance of the scheduled closing date of Friday, November 19, 2004.

29.    The closing of the Merrell Contract did not occur on November 19, 2004.

30.    Immediately before the Thanksgiving Day holiday scheduled for November 25, having heard nothing about the status of the closing from the Defendant, the Plaintiff contacted Stacey Olmstead, who was the Merrells' real estate agent.

31.    Stacey Olmstead informed the Plaintiff that the contingencies in the Merrell Contract had, in fact, never been removed and that any closing on the contract was now in serious doubt because Mr. Merrell had been involved in a serious automobile accident on November 4, 2004, resulting in numerous subsequent surgeries for him.

---

[13] Ex. 7.

[14] Ex. 8.

[15] Ex. 9.

32.     Stacey Olmstead further informed the Plaintiff that the Merrells' willingness, if not their ability, to close the contract was now in serious jeopardy because of the accident.

33.     Stacey Olmstead further informed the Plaintiff that the Defendant had known about the auto accident for a number of days and she expressed shock that she had not forwarded the information to him.

34.     It was not until December 3, 2004, in response to a demand letter written by the Plaintiff to the Defendant and to the RE/MAX brokerage firm,[16] that the Defendant communicated to the Plaintiff that:  (1) the contingencies had, in fact, never been removed; and (2) the Merrells had terminated the contract on November 29, 2004 pursuant to their rights under the unsatisfied contingencies.[17]

35.     Approximately one year later, after the subsequent sale of their Belden Street residence through the auspices of another broker, the Plaintiff initiated litigation against the Defendant and against the RE/MAX brokerage firm on December 27, 2005 before the County Court at Law #1 in and for Grayson County, Texas, in cause no. 2005-1-234CV (the "State Court Litigation").[18]

36.     Two and one-half years later, on the eve of trial, the Plaintiff and the Defendant reached a settlement of the claims asserted in that State Court Litigation.

37.     No issue was actually litigated by the trial court in that litigation.

38.     Pursuant to the agreement of the parties, on May 16, 2008, the County Court at Law #1 entered judgment for the Plaintiff and against the Defendants, jointly and severally, in the amount of $27,500.00, with post-judgment interest thereon at the highest legal rate from the date of Judgment (5% per annum) until paid, along with all costs taxed to the Defendants (the "Judgment").[19]

---

[16] Ex. 10.

[17] Ex. 11.

[18] Ex. 20.

[19] Ex. 19.

39.     Between the entry of the Judgment in May 2008 and Spring 2009, the Defendant tendered partial payments to the Plaintiff toward satisfaction of the Judgment amount in an approximate amount of $8,000.00 to $9,000.00.

40.     The Defendant filed her voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on May 3, 2010.  The Defendant voluntarily converted her case to a case under Chapter 7 on August 23, 2010.

41.     The Plaintiff timely filed his Complaint Objecting to the Discharge of a Debt on August 9, 2010, seeking to except his claim arising from the Judgment from the scope of any discharge granted to the Defendant.[20]

42.     The Plaintiff contends that his claim is non-dischargeable as a debt obtained by false pretenses, a false representation or actual fraud under 11 U.S.C. §523(a)(2)(A) or, alternatively, as a defalcation by a fiduciary under 11 U.S.C. §523(a)(4).

43.     The Defendant represented to the Plaintiff that the Merrells had removed the financing and property sale contingencies previously existing in the Merrell Contract.

44.     The Defendant represented to the Plaintiff that the Merrells had tendered the additional earnest money required by the contract upon removal of the previous contingencies.

45.     The Defendant represented to the Plaintiff that the sole circumstance that was delaying progress toward the closure of the Merrell Contract was the existence of problems between the Merrells and their lender, despite the Defendant's knowledge that Mr. Merrell had earlier sustained serious injuries in an automobile accident.

46.     The Defendant represented the existence of circumstances to the Plaintiff that, if true, would have compelled the Merrells to close the sale of the Plaintiff's Belden Street residence or risk a substantial liability for a breach of the sales contract.

---

[20]   This adversary proceeding was abated for a significant period of time as the Plaintiff unsuccessfully sought compensation from third party sources.

47.  The Defendant represented the existence of circumstances to the Plaintiff that, if true, created a substantial risk that the Plaintiff would have to vacate the Belden Street residence without having secured a suitable housing alternative to which he could move his family in less than three weeks' time.

48.  It was to the financial benefit of the Defendant to preclude the Plaintiff from selling the Belden Street residence to a new buyer that had not been procured by the Defendant.

49.  On the date of each representation in November 2004, the Defendant knew that there was a substantial risk that the Merrells would likely be incapable or unwilling to proceed with the closing on the Belden Street residence.

50.  On the date of each representation in November 2004, the Defendant knew that the Merrells could unilaterally elect to forego the closing of the contract on the sale of the Belden Street residence with impunity.

51.  Yet the Defendant failed and/or refused to communicate any of those facts to the Plaintiff as her client/principal.

52.  The Defendant knew that the foregoing representations regarding the current status of the Merrell Contract were false when they were made.

53.  The Defendant made the foregoing false representations to the Plaintiff with the intention of deceiving him.

54.  The foregoing false representations created the perceived necessity for, and thereby induced the Plaintiff to take, expeditious action to procure suitable housing arrangements for the Plaintiff's family within an abbreviated time period.

55.  In the absence of the false representations, the Plaintiff would not have incurred the financial obligations necessary to procure suitable alternative housing arrangements for his family on an expedited basis prior to learning that the sale of his Belden Street residence to the Merrells would not likely occur.

56.  In the absence of the false representations, the Plaintiff would not have incurred the financial obligations necessary to procure suitable alternative housing arrangements for his family on an expedited basis prior to learning that he and his family would not likely be required to vacate their Belden Street residence.

-8-

57.     In the absence of the false representations, the Plaintiff would not have expended funds for the procurement of necessary utility services at the Clay Lane rental property prior to learning that the sale of his Belden Street residence to the Merrells would not likely occur.

58.     The Plaintiff thus actually and justifiably relied upon the false representations of the Defendant.

59.     The Plaintiff suffered financial losses as a direct and proximate cause of that reliance, the scope of which he voluntarily compromised to the amount of $27,500.00, plus interest, as reflected in the Judgment arising from the State Court Litigation, less any subsequent payments by the Defendant that must be properly applied to that indebtedness.

60.     The Plaintiff failed to present proof sufficient to demonstrate the reasonable and necessary nature of attorney's fees incurred in this proceeding.

61.     To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.

## CONCLUSIONS OF LAW

1.      The Court has jurisdiction to consider the adversary complaint in this proceeding pursuant to 28 U.S.C. §§1334 and §157.

2.      The Court has the authority to enter a final judgment in this adversary proceeding since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and (O).

3.      In an action to determine the dischargeability of a debt, the creditor has the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

4.      "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 619 (5th Cir. 2011) (citing *Hudson v. Raggio & Raggio, Inc. (In re Hudson)),* 107 F.3d 355, 356 (5th Cir. 1997).

5.     The fact that there is a debt owing by the Defendant to the Plaintiff is established through the final judgment issued in the State Court Litigation.  However, this Court retains exclusive jurisdiction to determine whether that debt is dischargeable.  *Grogan v. Garner*, 498 U.S. 279, 285, n.11, (1991); *Fielder v. King (Matter of King),* 103 F.3d 17, 19 (5th Cir. 1997).

*Effect of Agreed Judgment*

6.     The binding effect of the provisions of the Judgment issued in the State Court Litigation and the possibility that the debt recognized therein could be held nondischargeable is not precluded because the agreed judgment was preceded by a settlement agreement.

7.     The United States Supreme Court has now twice confirmed that the doctrine of novation does not operate to alter the nature of a debt for dischargeability purposes and that a bankruptcy court is not precluded on *res judicata* grounds from determining the nondischargeability of a fraud-based claim even though such a claim was settled prior to bankruptcy and such settlement did not contain a finding of fraud.  See *Brown v. Felsen*, 442 U.S. 127 (1979) [parties settling suit by stipulation followed by entry of agreed judgment];[21] *Archer v. Warner*, 538 U.S. 314 (2003) [parties settling suit by settlement agreement only with release of all claims arising from the litigation except for payment of the settlement amount].

8.     However, *Brown* and *Archer* do not stand for the proposition that a debt allegedly arising from wrongful conduct, and subsequently made the subject of a settlement agreement, becomes nondischargeable *ipso facto*.  They simply permit a creditor, such as the Plaintiff in this case, to demonstrate that a debt recognized and quantified within the provisions of a settlement and thereafter memorialized in an agreed judgment arises from circumstances that meet the requirements for nondischargeability under §523(a).

---

[21]   The *Brown* court held that res judicata was inapplicable because

>    [D]efendant does not assert a new ground for recover, nor does he attack the validity of the prior judgment.  Rather, what he is attempting to meet here is the new defense of bankruptcy which respondent has interposed between petitioner and the sum determined to be due him.

*Brown*, 442 U.S. at 133.

9.      Thus, it was appropriate for the parties to introduce evidence regarding the nature
of the debt which was compromised by agreement to determine whether it falls
within the parameters of §523(a) and, though *res judicata* does not preclude
further inquiry into the true nature of a settled debt, the principles of collateral
estoppel may still be applicable with regard to the establishment of those
prerequisites necessary to a finding of nondischargeability.  *Andra Group v.
Gamble-Ledbetter (In re Gamble-Ledbetter)*, 419 B.R. 682, 693 (Bankr. E.D. Tex.
2009).

10.     However, "in cases where the state court judgment [does] not contain detailed
facts sufficient as findings to meet the federal test of nondischargeability, leaving
the bankruptcy court unable to discern from the record the subsidiary facts upon
which the false-pretense allegation was made, the bankruptcy court may properly
refuse to accord collateral estoppel effect to the state court judgment." *Tober
Safier Shoe Co. v. Allman (In re Allman)*, 735 F.2d 863, 865 (5th Cir. 1984)
(internal quotations omitted).

11.     Without even a conclusory statement as to the Defendant's purportedly fraudulent
conduct, which would itself be insufficient if unsupported by actually-litigated
subsidiary facts in the record, *see Simpson & Co. v. Shuler (In re Shuler)*, 722 F.2d
1253, 1257-58 (5th Cir. 1984), this Court is unable to give collateral estoppel
effect to the agreed state court judgment.  *See Allman*, 735 F.2d at 865-66.


*Nondischargeability Under 523(a)(2)(A):  Debt Arising*
*by False Pretenses, False Representation, or Actual Fraud*.

12.     The Plaintiff's Complaint seeks a determination that the debt owed to him should
be excepted from discharge under §523(a)(2)(A) as a debt obtained by false
pretenses, a false representation or actual fraud.

13.     11 U.S.C. §523(a)(2)(A) of the Bankruptcy Code provides that:

a discharge under §727 of this title does not discharge an
individual debtor from any debt for money, property, or
services, ... to the extent obtained by false pretenses, a false
representation, or actual fraud, other than a statement
respecting the debtor's or an insider's financial condition.

14.    Section 523(a)(2)(A) encompasses similar but distinct causes of action.  Though other circuits have applied a uniform standard to all § 523(a)(2)(A) actions,[22] the Fifth Circuit has distinguished the elements of "actual fraud" and of "false pretenses and false representations."  *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995).

15.    The distinction recognized by the Fifth Circuit appears to be a chronological one, resting upon whether a debtor's representation is made with reference to a future event, as opposed to a representation regarding a past or existing fact. *Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir.1991) [A debtor's promise ... related to a future action which does not purport to depict current or past fact ... therefore cannot be defined as a false representation or a false pretense].

16.    Because the representations by the Defendant regarding the status of the Merrell Contract regarded a past or existing fact, any such statement cannot be properly characterized as actual fraud in this Circuit.

17.    Thus, the validity of the Plaintiff's claim under §523(a)(2)(A) in this case rests upon sufficient proof that the debt was obtained by a false representation or false pretense.

18.    While "false pretenses" and a "false representation" both involve intentional conduct intended to create and foster a false impression, the distinction is that a false representation involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement.  *See Walker v. Davis (In re Davis),* 377 B.R. 827, 834 (Bankr. E.D. Tex. 2007); and *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003).

---

[22]    *See, e.g., Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991); *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987).  Though some bankruptcy courts outside of the Fifth Circuit have cited the decision of the United States Supreme Court in *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351(1995), in support of their proposition that all of the §523(a)(2)(A) actions are governed by the elements for actual fraud, *see, e.g., AT&T Universal Card Services v. Ellingsworth (In re Ellingsworth)*, 212 B.R. 326 (Bankr. W.D. Mo. 1997); *AT& T Universal Card Services v. Alvi (In re Alvi),* 191 B.R. 724 (Bankr. N.D. Ill. 1996); the Supreme Court in that case was actually distinguishing the language used in §523(a)(2)(A) from that utilized in §523(a)(2)(B) in order to determine the degree of reliance necessary above mere reliance in fact in order to exempt a debt from discharge under (a)(2)(A).  Since the Supreme Court specifically refused to even apply their direct holding regarding the degree of  reliance in actual fraud cases to cases of false pretense or false representation, 116 S.Ct. at 443, n. 8, the statement that the Court erased all distinctions between the three (a)(2)(A) actions strains credibility.

19.     "In order for the court to deny discharge of a debt under section 523(a)(2)(A) on the basis that the debt was procured by false pretenses or a false representation, the plaintiff must prove by a preponderance of the evidence that the debtor made representations that were (1) knowing and fraudulent falsehoods, (2) describing past or current facts, (3) that were relied upon by the other party." *Mosiman v Warren (In re Warren)*, 2010 WL 2640267, at *2 (Bankr. N.D. Tex., June 29, 2010) (*citing Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992).[23]

20.     A knowing and fraudulent falsehood may also arise by nondisclosure when a party with a duty to disclose facts fails to do so. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex.1997); cited in *Cronus Offshore, Inc. v. Kerr McGee Oil & Gas Corp.*, 369 F.Supp.2d 848, 858 (E.D. Tex. 2004).

21.     The existence of such silence when there is a duty to speak may equate to a misrepresentation of material facts. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex.1986); *Ho v. UT Arlington*, 984 S.W.2d 672, 691 (Tex. App. – Amarillo 1998, pet. denied).

22.     A duty to speak may arise where: (1) there is a fiduciary relationship; (2) one voluntarily discloses partial information, but fails to disclose the whole truth; (3) one makes a representation and fails to disclose new information that makes the earlier representation misleading or untrue; or (4) one makes a partial disclosure and conveys a false impression. *Cronus,* 369 F.Supp.2d at 858, citing, *inter alia*, *Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App. – Houston [14th Dist.] 1997, pet. denied).

23.     The failure to disclose a material fact when one has a duty to do so is sufficient to establish non-dischargeability for fraud under § 523(a)(2)(A). *Kleindienst v. Horne (In re Horne)*, 2011 WL 350473 at *7 (Bankr. W.D. Tex., Feb. 2, 2011); *Int'l Beauty Products, L.L.C. v. Beveridge (In re Beveridge),* 416 B.R. 552, 569-70

---

[23] A debt may also be declared nondischargeable if it was obtained by actual fraud. To have a debt excepted from discharge pursuant to the "actual fraud" provision in § 523(a)(2)(A), an objecting creditor must prove that (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained losses as a proximate result of the representations. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995), *as modified by the United States Supreme Court decision of Field v. Mans*, 516 U.S. 59 (1995) [regarding the proper standard of reliance].

(Bankr. N.D. Tex. 2009); and cases cited therein.

24. The knowledge of the Defendant regarding the circumstances surrounding the Merrell Contract in November 2004 created a duty upon the Defendant to reveal those circumstances to the Plaintiff – a duty that she breached.

25. The affirmative and knowing misstatements of fact by the Defendant to the Plaintiff regarding the status of the Merrell Contract constituted false representations for the purposes of 11 U.S.C. §523(a)(2)(A).

26. The balance of the debt due and owing by the Defendant, Josephine Hudgins Jordan, to the Plaintiff, David M. Kennedy, as established by the Judgment issued in the State Court Litigation, is non-dischargeable under 11 U.S.C. §523(a)(2)(A) as a debt obtained by false representations.


*Nondischargeability under § 523(a)(4)*:  *Debt Arising From Fraud or Defalcation in a Fiduciary Capacity*.

27. 11 U.S.C. §523(a)(4) provides that "A discharge under 11 U.S.C.§ 727 does not discharge an individual from a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny."

28. Whether the actions of an individual were taken in a fiduciary capacity for the purposes of §523(a)(4) is determined by federal law.  *FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 620 (5th Cir. 2011).

29. However, "state law is important in determining whether or not a trust obligation exists."  *Gupta v. Eastern Idaho Tumor Institute, Inc. (In re Gupta)*, 394 F.3d 347, 350 (5th Cir. 2004).

30. The Fifth Circuit has discussed the concept of a fiduciary under §523(a)(4) in the following terms:

> [T]he concept of fiduciary under §523(a)(4) is narrower than
> it is under general common law.  Under §523(a)(4),
> "fiduciary" is limited to instances involving express or
> technical trusts.  The purported trustee's duties must,
> therefore, arise independent of any contractual obligation.
> The trustee's obligations, moreover, must have been imposed

**-14-**

> prior to, rather than by virtue of, any claimed
> misappropriation or wrong.  Constructive trusts or trusts *ex*
> *malificio* thus also fall short of the requirements of
> §523(a)(4).
> . . . Statutory trusts, by contrast, can satisfy the dictates of
> §523(a)(4).  It is not enough, however, that a statute purports
> to create a trust:  A state cannot magically transform ordinary
> agents, contractors, or sellers into fiduciaries by the simple
> incantation of the terms "trust" or "fiduciary."  Rather, to meet
> the requirements of §523(a)(4), a statutory trust must (1)
> include a definable res and (2) impose "trust-like" duties.

*Texas Lottery Comm'n v. Tran (In re Tran),* 151 F.3d 339, 342-43 (5th Cir. 1998).

31.    Thus, the trust relationship must exist prior to the creation of, and without
       reference to, the indebtedness in question.  *Angelle v. Reed (In re Angelle)*, 610
       F.2d 1335, 1338 (5th Cir. 1980).

32.    The Fifth Circuit recognizes that the "technical" or "express" trust requirement is
       not limited to trusts that arise by virtue of a formal trust agreement, but includes
       relationships in which trust-type obligations are imposed pursuant to statute or
       common law."  *FNFS, Ltd. v. Harwood (In re Harwood)*, 404 B.R. 366, 393
       (Bankr. E.D. Tex. 2009) (citing *LSP Inv. Partnership v. Bennett (In re Bennett)*,
       898 F.2d 779, 784-85 (5th Cir.), *cert. denied*, 510 U.S. 1011, 114 S.Ct. 601, 126
       L.Ed.2d 566 (1993)).

33.    Thus, federal courts in this context have "not hesitated to conclude that debts
       arising from misappropriation by persons serving in a traditional, pre-existing
       fiduciary capacity, as understood by state law principles, are non-dischargeable."
       *Gupta*, 394 F.3d at 350.

34.    Under Texas law, the Defendant in this case acted in a fiduciary capacity as to the
       Plaintiff.  *Wu v. Rhee (In re Rhee)*, 481 B.R. 880, 899 (Bankr. S.D. Tex. 2012),
       citing 22 TEX. ADMIN. CODE § 531.1 (2012) ["A real estate broker or salesperson,
       while acting as agent for another, is a fiduciary."].  *See also, Avila v. Perez (In re
       Perez)*, 2012 WL 2576393, at *22 (Bankr. N.D. Tex., July 3, 2012) and cases cited
       therein.

35.    "A fiduciary duty imposes special obligations on a real estate agent.  The real
       estate agent must be faithful and observant to trust placed in the agent, and be
       scrupulous and meticulous in performing the agent's functions.  Additionally, the

real estate agent [must] place no personal interest above that of the agent's client."
*Rhee*, 481 B.R. at 901, citing 22 TEX. ADMIN. CODE § 531.1 (2012).

36.    In multiple respects, as a result of her false representations to the Plaintiff, the
Defendant committed a fraudulent breach of her fiduciary duty to the Plaintiff.

37.    Thus, the balance of the debt owed by the Defendant to the Plaintiff, as established
by the Judgment issued in the State Court Litigation, is therefore also excepted
from discharge in its entirety as a debt arising from fraud while acting in a
fiduciary capacity pursuant to 11 U.S.C. §523(a)(4).

*Attorney's Fees and Court Costs*

38.    "As a general rule, a party seeking to recover attorney's fees [under Texas law]
carries the burden of proof.  Although courts should consider several factors when
awarding attorney's fees, a short hand version of these considerations is that the
trial court may award those fees that are "reasonable and necessary" for the
prosecution of the suit."  *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10
(Tex.1991).

39.    The failure of the Plaintiff to present actual evidence of the attorney's fees
incurred, and to demonstrate the reasonable and necessary nature of such fees,
precludes the recovery of attorney's fees incurred in the prosecution of this
adversary proceeding.

40.    Court costs of $250.00 are awarded to the Plaintiff to be paid by the Defendant.

*Conclusion*

41.    Thus, the balance of the debt due and owing by the Defendant, Josephine Hudgins
Jordan, to the Plaintiff, David M. Kennedy, as established by the Judgment issued
in the State Court Litigation, plus court costs in the amount of $250.00, is therefore
excepted from discharge pursuant to 11 U.S.C. §523(a)(2)(A) and §523(a)(4).

42.    All other relief requested in the Plaintiff's Complaint in the above-referenced
adversary proceeding shall be denied.

**-16-**

43.  To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

44.  An appropriate judgment shall be entered consistent with these findings and conclusions.

NOT

Signed on 07/03/2013

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

FOR

PUBLICATION

-17-